UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSE ANTONIO VALDERRAMA
SANCHEZ,

        Case No. 2:26-cv-454-KCD-NPM

        Petitioner,

    v.

FIELD OFFICE DIR. GARRETT
RIPA, FIELD OFFICE DIRECTOR,
ENFORCEMENT AND REMOVAL
OPERATIONS (ERO), et al.,

        Respondents.

                              /

## <u>ORDER</u>

Petitioner Jose Antonio Valderrama Sanchez has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 1.)[1] He claims that the Attorney General is holding him without a bond hearing in violation of the Immigration and Nationality Act ("INA"), and his continued detention without a bond determination contravenes the Fifth Amendment and the Administrative Procedures Act. (*Id.* at 18-23.)[2] Respondent opposes the petition. (Doc. 11.) For the reasons below, the petition is **DENIED**.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

[2] The petition is not consecutively paginated, so the Court uses the page numbers generated by its electronic filing system.

### I. Background

Sanchez illegally entered the United States on June 9, 2006. (Doc. 1 ¶ 45; Doc. 11-1 at 1.) Important for reasons discussed below, he was apprehended at the border and released. (*Id.*) Sanchez was recently re-detained by ICE. (*Id.* ¶ 7.) After processing, he landed at the Glades County Detention Center in the Middle District of Florida. (*Id.* ¶ 6a.)

### II. Discussion

Sanchez's habeas petition raises two substantive claims through several different vehicles. First, his detention violates the INA because he is ineligible for a bond hearing.  (Doc. 1 at 19.) Second, his detention without a bond hearing violates the Fifth Amendment's Due Process Clause. (*Id.*) These issues are addressed in turn.

#### A. INA

Sections 1225 and 1226 of the INA govern the detention of noncitizens before a final order of removal. The former provision covers "inadmissible arriving aliens" who are "present in the United States [but have] not been admitted." 8 U.S.C. § 1225(a)(1). So-called "'applicants for admission' in the language of the statute." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Pertinent here, § 1225 "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Id.* The only exception is release

"on parole for urgent humanitarian reasons or significant public benefit." *Id.* at 288.

On the other hand, § 1226 has historically "authorize[d] the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings[.]" *Jennings*, 583 U.S. at 289 (emphasis added). Section 1226(a) sets out a discretionary detention framework for aliens arrested and detained "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). While the arresting immigration officer makes an initial custody determination, noncitizens detained under § 1226(a) may appeal that decision in a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306.

According to Sanchez, he is entitled to a bond hearing under § 1226. (Doc. 1 at 19.) But this argument runs headlong into the facts. Sanchez was apprehended at the border. That puts him squarely under § 1225. *See, e.g.*, *Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025) ("[Section] 1225 applies to noncitizens arriving at a border or port and are presently seeking admission into the United States."). The fact that Sanchez spent time in the United States after being released—and was eventually apprehended in the country—does not change his

classification. *See Jennings*, 583 U.S. at 288 ("[W]hen the purpose of the parole has been served, 'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" (quoting 8 U.S.C. § 1182(d)(5)(A))); *Moore v. Nielsen*, No. 4:18-cv-01722-LSC-HNJ, 2019 WL 2152582, at *3 (N.D. Ala. May 3, 2019) ("[A]lthough aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country."); *see also Castillo v. De Andra Ybarra*, No. CIV 25-1074 JB/JFR, 2026 WL 370497, at *28 (D.N.M. Feb. 10, 2026).

Section 1225 says nothing "whatsoever about bond hearings." *Jennings*, 583 U.S. at 297. So Sanchez's continued detention without a bond hearing cannot be in violation of the INA.

### B. Due Process

Sanchez argues that procedural due process requires that he receive an individualized bond hearing. (Doc. 1 at 20.) That argument immediately hits a roadblock. As the Supreme Court explained in *Zadvydas v. Davis*, for the first six months, detention of a removable alien is presumptively reasonable and does not run afoul of the Fifth Amendment's due process protections. 533

4

U.S. 678, 701 (2001). Here, ICE took Sanchez into custody on November 22, 2025. Because he has been detained for nearly four months, he remains squarely within the window in which his detention is presumptively reasonable. *See Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300, at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months"); *see also Jiang v. Mukasey*, No. 2:08-cv-773-FtM-29DNF, 2009 WL 260378, at *2 (M.D. Fla. Feb. 3, 2009); *Noel v. Glades Cnty. Sheriff*, No. 2:11-cv698-FtM-29SPC, 2011 WL 6412425, at *2 (M.D. Fla. Dec. 21, 2011).

When the Supreme Court confronted the constitutional perils of indefinite immigration detention in *Zadvydas*, it did not instruct lower courts to start weighing the process afforded to the detainee. It set a timer. For the first six months, detention is presumptively reasonable. *Id.* 533 U.S. at 701. So until that timer goes off, *Zadvydas* itself supplies the constitutional metric. *Martinez v. Larose*, 968 F.3d 555, 566 (6th Cir. 2020). "In other words, the *Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation." *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024). Because Sanchez's detention is barely out of the starting gate, he is not yet entitled to anything more.

One last issue. Sanchez brings several claims under the Administrative Procedure Act that are premised on the same statutory and constitutional

arguments presented above. (Doc. 1 at 21-25.) These claims are denied because the APA has no application here. *See Gomez-Alcina v. Noem*, No. 2:25-CV-1164-KCD-DNF, 2026 WL 607614, at *5 (M.D. Fla. Mar. 4, 2026).

### III. Conclusion

Based on the record provided, Sanchez's detention does not violate the INA, APA, or the Constitution.[3] He is thus not entitled to habeas relief, and the petition (Doc. 1) is **DENIED**. The Clerk is directed to terminate any pending motions and deadlines and close the case.

**ORDERED** in Fort Myers, Florida on March 17, 2026.

Kyle C. Dudek
United States District Judge

---

[3] The Court is aware of a pending California case that certified a class action of aliens who are in immigration detention and being denied access to a bond hearing. *See Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). *Bautista* has no application here because Sanchez falls outside the proposed class since he was "apprehended upon arrival." *Id.* at *9. In addition, the Court does not find *Bautista* binding here. *See, e.g., Sanchez-Moralez v. Field Off. Dir., Miami Field Off., U.S. Immigr. & Customs Enf't*, No. 26-CV-20217-JB, 2026 WL 496726, at *2 (S.D. Fla. Feb. 23, 2026).

6